IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID M. BILLMAN,

        Petitioner,

        v.

WARDEN, CORRECTIONAL
RECEPTION CENTER,

        Respondent.

        **CASE NO. 2:14-cv-1910**
        **JUDGE ALGENON L. MARBLEY**
        **MAGISTRATE JUDGE KEMP**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition (Doc. 1), the return of writ (Doc. 8), Petitioner's traverse (Doc. 10), and the associated exhibits. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this case be **DISMISSED**.

## I. Procedural History

On November 17, 2011, the Monroe County, Ohio grand jury returned a twelve-count indictment charging Petitioner with rape, attempted rape, and gross sexual imposition. *Return of Writ*, Exhibit 1. The alleged victims were both minor children.

Petitioner pleaded not guilty and the case was tried to a jury. The jury convicted Petitioner on counts one, three, four, seven, eight, nine, ten, eleven, and twelve of the indictment. The counts of conviction included two charges of rape involving a victim less than ten years old. *Return*, Ex. 7. On April 18, 2012, the trial court sentenced

Petitioner to concurrent terms of life without parole on the two rape counts, and seven consecutive sixty-month prison terms for gross sexual imposition.  He was also classified as a Tier III sex offender.  *Return*, Ex. 8.  The trial court overruled a subsequently-filed motion for a new trial.  *Return*, Ex. 11.

Through counsel, Petitioner appealed his conviction to the Seventh District Court of Appeals, and also appealed the order denying his motion for a new trial.  The appeals were consolidated at Petitioner's request.  In his appellate brief, he raised five assignments of error: (1) that the convictions were not supported by sufficient evidence; (2) that the convictions were against the manifest weight of the evidence; (3) that the indictment was duplicative and vague; (4) that the trial court improperly permitted Petitioner's spiritual advisor to testify about confidential communications; and (5) that the trial court erred in overruling his motion for a new trial.  *Return*, Ex. 16.  In a decision rendered on December 16, 2013, the court of appeals overruled each of Petitioner's assignments of error and affirmed his convictions.  *State v. Billman*, 2013 WL 6859096 (Monroe Co. App. December 16, 2013).

Acting without the benefit of counsel, Petitioner filed a motion to take a delayed appeal to the Ohio Supreme Court.  That court received his motion on February 18, 2014 and filed it on  March 11, 2014.  Petitioner explained in the motion that his appellate counsel told him of the court of appeals decision eighteen days after it was filed, and also declined to assist in taking a further appeal.  As a result, Petitioner was unable to prepare and file his appeal by the deadline, but was able to mail his motion to the Supreme Court four days after the deadline for filing a timely notice of appeal had

passed. *Return*, Ex. 21. The Ohio Supreme Court denied the motion and declined to consider the appeal. *State v. Billman*, 138 Ohio St.3d 1467 (Apr. 23, 2014).

On October 15, 2014, Petitioner filed his petition for a writ of habeas corpus with this court. He asserts four grounds for relief, which he states (in these words) as follows:

> **GROUND ONE**: State did not prove venue, nor present evidence, to support the convictions, at trial.

> **GROUND TWO**: The convictions were against the manifest weight of the evidence.

> **GROUND THREE**: The charges are duplicitous (carbon copies) without distinction and do not protect the petitioner against double jeopardy.

> **GROUND FOUR**: State grossly abused its discression by not granting a new trial, or at least grant a hearing based on the recanting testimony of both VB and SB.

Respondent asserts that all of these claims were procedurally defaulted because Petitioner did not perfect a timely appeal to the Ohio Supreme Court. Respondent also argues that ground three, relating to the sufficiency of the indictment, was waived because Petitioner did not timely raise that objection, and that none of his claims are cognizable in federal habeas corpus because he presented them to the state courts purely as state law claims. Finally, Respondent contends that all of the claims presented here are without merit.

## II. The Facts

The Court begins by reciting the facts as they were set out in the state court of appeals opinion.  In its summary of the evidence introduced at trial, that court said:

> Appellant and his wife, Mary Billman, are foster parents working with Monroe County Child and Family Services. According to testimony, the two live in Monroe County at 31143 Liberty Ridge Rd., Wingett Run, Ohio 45789 and have lived there since 1994. A total of seven children lived in the house under the care of the couple at all periods relevant to this matter. In 2006 Appellant and his wife accepted responsibility for Child X and Child Y, who had been removed from the home of their biological father due to sexual abuse. According to Appellant's wife, when the two children entered Appellant's home, both had physical indications of sexual abuse. Both children lived in Appellant's home from February of 2005 until the present. Appellant resided in the family home until 2011, when his wife asked him to leave. Appellant moved out on October 28, 2011 after his wife confronted him with the accusations of Child X and Child Y, who told her that Appellant had been sexually abusing Child Y the entire time she lived with him, and that he had just started abusing Child X.
>
> On October 28, 2011, after he left the house, Appellant called a friend, David A. Preston, and announced: "I molested [Child Y]." (Pretrial Motion Hrg. Tr., p. 46; Tr. Vol. III, p. 93.) Preston was initially uncertain who was speaking because Appellant had not identified himself. When Appellant identified himself, Preston asked if he had a place to stay and offered to allow Appellant to stay the night in his house. Appellant and Preston had been friends for more than six years; they initially met through work near Cincinnati. Although they met because of their work, the two bonded through their Christian faith and regularly discussed religious issues. The two men were both assistant pastors, but attended different non-denominational churches. Neither man attended seminary or had undertaken any formal program of religious or pastoral study. Each man had been "ordained" by the pastor of his respective church. Neither church is formally affiliated with any organized Christian denomination. Appellant stayed with Preston for a brief period, but eventually called the Monroe County Sheriff's Department and turned himself in.

On November 17, 2011, Appellant was indicted on twelve counts alleging abuse of both Child X and Child Y. The counts included two instances of gross sexual imposition with regard to Child X, who was then eight years old. The remaining ten counts involved Child Y, who was then then nine years old, and included two instances of rape, two instances of attempted rape, and six instances of gross sexual imposition. The charges as they related to Child X were alleged to have occurred between January 1, 2011 and October 28, 2011. The charges as they related to Child Y were alleged to have occurred between January 1, 2006 and October 28, 2011. The trial court found both children competent to testify at trial and their testimony, coupled with that of the various adults to whom Appellant admitted his crimes, composed the bulk of the case against Appellant.

Although Appellant was originally charged with two counts of gross sexual imposition involving Child X, her testimony at trial was confused, and ultimately she described a single incident. Child Y, however, described Appellant touching and rubbing her vagina on ten separate occasions in three different locations in the home: the living room, her mother's bedroom, and another sister's room. Child Y also described having been made to touch Appellant's genitals on six occasions and revealed multiple instances when Appellant licked her genitals. Child Y recounted three instances when Appellant placed his penis, which she described as a "[s]oft-ish/hard-ish thing," in her mouth. (Tr. Vol.III, p. 71.) During two of these incidents, according to Child Y, a "clear-ish" liquid went into her mouth, which she then spit into the toilet. (Tr. Vol.III, p. 74.) According to Child Y, during one of the three occasions there was no liquid. In the entirety of Child Y's testimony she related nineteen separate encounters with Appellant that could support gross sexual imposition charges. At least three and possibly thirteen of those nineteen incidents involved conduct constituting rape (oral and digital). Child Y said Appellant told her not to tell anyone about the things he did " 'cause I could go to prison for it." (Tr. Vol.III, p. 74.)

Ten of the original twelve counts were submitted to the jury: two counts of gross sexual imposition involving Child X; two counts of rape involving Child Y; and six counts of gross sexual imposition involving Child Y. The jury returned guilty verdicts on nine of the ten counts. Appellant was

acquitted of the second count of gross sexual imposition involving Child
X.

*State v. Billman*, 2013 WL 6859096, *1-2.

### III.  Procedural Default

Congress has provided that state prisoners who are in custody in violation of the
Constitution or laws or treaties of the United States may apply to the federal courts for a
writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the
state courts to protect the constitutional rights of criminal defendants, and in order to
prevent needless friction between the state and federal courts, a state criminal
defendant with federal constitutional claims is required to present those claims to the
state courts for consideration. 28 U.S.C. § 2254(b), (c).  If he fails to do so, but still has an
avenue open to him by which he may present his claims, then his petition is subject to
dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103
(1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a
petitioner has failed to exhaust his claims but would find those claims barred if later
presented to the state courts, "there is a procedural default for purposes of federal
habeas...." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person
convicted of a crime in a state court fails (for whatever reason) to present a particular
claim to the highest court of the State so that the State has a fair chance to correct any
errors made in the course of the trial or the appeal before a federal court intervenes in
the state criminal process.  This "requires the petitioner to present 'the same claim

under the same theory' to the state courts before raising it on federal habeas review."
*Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494,
497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is
that a habeas petitioner must do so in a way that gives the state courts a fair
opportunity to rule on the federal law claims being asserted. That means that if the
claims are not presented to the state courts in the way in which state law requires, and
the state courts therefore do not decide the claims on their merits, neither may a federal
court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72,
87 (1977), "contentions of federal law which were not resolved on the merits in the state
proceeding due to respondent's failure to raise them there as required by state
procedure" also cannot be resolved on their merits in a federal habeas case-that is, they
are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state
argues that a federal habeas claim is waived by the petitioner's failure to observe a state
procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must
determine that there is a state procedural rule that is applicable to the petitioner's claim
and that the petitioner failed to comply with the rule." *Id.* Second, the Court must
determine whether the state courts actually enforced the state procedural sanction. *Id.*
Third, it must be decided whether the state procedural forfeiture is an adequate and
independent state ground upon which the state can rely to foreclose review of a federal
constitutional claim. *Id.* Finally, if the Court has determined that a state procedural
rule was not complied with, and that the rule was an adequate and independent state

ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in

state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

## A. Cause for the Default

Petitioner does not dispute that he failed to submit his notice to the Ohio Supreme Court in a timely fashion. However, he claims that the fact that he was confined in a mental health unit at the Corrections Reception Center at the time his appeal was due, and that he had to rely on staff members to respond to his requests for legal assistance, should excuse his default. He claims that exhibits he submitted in support of his motion for leave to file a delayed appeal showed that he was unable to obtain notary services for his affidavit of indigence until the day his notice of appeal was due, and then only through use of the prison grievance procedure. The affidavit he attached to his motion for leave to file a delayed direct appeal (*Return*, Ex. 21) states that he did not receive notice of the court of appeals' decision until January 3, 2014; that he received information from the Clerk of the Ohio Supreme Court on January 9, 2014; that he was housed in a 23-hour lockdown unit and was allowed only an hour per week of library time; that he had to grieve the issue of access to the law library on January 17, 2014; that he was not permitted to meet with a clerk from the law library until January 30, 2014; and that he was told on that day that he would have to move for a delayed appeal because his notice of appeal would not reach the Ohio Supreme Court on time if it were mailed that day. Petitioner's affidavit did not address the issue of being denied access to notary services. The letter from his attorney emphasized the need to file the appeal on or before January 30, 2014, or it would be late.

The federal courts have not been particularly sympathetic to claims that lack of access to a law library should excuse a procedural default. For example, in *Robertson v.*

*Abramajtys*, 144 F.Supp.2d 829 (E.D. Mich. 2001), the court rejected such a claim, noting that, in that case, even if various issues like a prison lock-down, the cancellation of library passes, and a computer system malfunction, affected the petitioner's ability to use the prison library, the fact that his appeal, when ultimately filed, relied primarily upon the legal issues presented to the state court of appeals undercut petitioner's claim that he needed to do new legal research before filing his appeal to the Michigan Supreme Court. The same result, based on the same reasoning, was reached in *Levy v. Ohio*, 2008 WL 339480 (N.D. Ohio Feb. 6, 2008). *See also Jones v. Armstrong*, 367 Fed.Appx. 256, 258 (2d Cir. March 1, 2010)(alleged insufficiency of prison legal resources did not violate constitutional right of access to the courts with respect to criminal appeal because plaintiff was "unable to explain how any alleged insufficiency of those resources prevented him from presenting to the Connecticut Supreme Court the very arguments he had clearly articulated in his intermediate state appeal").

Certainly, in some situations, issues with library access or access to legal assistance can hamper a prisoner's ability to comply with procedural requirements which are part of a state court appellate or post-conviction process. So, for example, in *Phillips v. Mills*, 1999 WL 685925 (6th Cir. Aug. 25, 1999), the Court of Appeals excused a procedural default committed by a prisoner who wished to file a post-conviction petition in Tennessee but who was incarcerated in Alabama without access to Tennessee legal materials, and who had been told by Alabama officials that he would have to wait until he was transferred to a Tennessee prison to file his petition. That was incorrect advice but the petitioner reasonably relied upon it, thus excusing the

procedural default he committed when his post-conviction petition was not filed on time.  It is clear, however, that these decisions are made on a case-by-case basis; in *Doliboa v. Warden U.S. Penitentiary Terre Haute*, 503 Fed.Appx. 358, 360 (6th Cir. Oct. 29, 2012), the Court of Appeals declined to accept a similar excuse - there, the petitioner was confined in Indiana but wished to pursue relief in an Ohio court - reasoning that not only did petitioner fail to explain whether he asked for such materials either from Ohio courts or Indiana prison officials, but also that "[t]here is … nothing in the record to suggest how the unavailability of Ohio legal materials prevented [petitioner] from presenting to the Ohio Supreme Court the very arguments that his former counsel articulated—and supported with case law—in [his] intermediate appeal to the Ohio Court of Appeals."

Here, the record does not support Petitioner's claim that he was denied access to notary services required to complete his indigency affidavit until it was too late for him to take a timely appeal.  He did not make that claim in the state court and has not explained why he could not have obtained notary services from someone other than the library law clerk before January 30, 2014.  Additionally, he was aware upon receipt of the letter from his attorney - a letter he admitted receiving 27 days before the deadline - that he had only until January 30, 2014, to take a timely appeal, and it appears that he had the materials he asked the Ohio Supreme Court for by January 9, 2015.  Like the petitioners in *Levy, Jones, and Doliboa*, the claims he wished to present to the Ohio Supreme Court were the same claims presented to the Seventh District Court of Appeals.  No additional research was needed in order for him to perfect his appeal.

Like the Ohio Supreme Court, this Court finds that Petitioner has not established good cause for his delay in taking the appeal.    For that reason, all of his claims were procedurally defaulted.

### B. Prejudice

In addition to demonstrating cause for a procedural default, a habeas petitioner must also demonstrate prejudice - that is, that but for the default, he would have meritorious claims to present to the federal court.  Petitioner cannot meet this standard, either, which is an independent reason to hold that his claims were procedurally defaulted.

A state prisoner's claims for habeas corpus relief are governed by the Antiterrorism and Effective Death Penalty Act of 1995 (the AEDPA), which amended the habeas corpus statute by including a standard of review that gives significant deference to the decisions made by the state courts on the constitutional issues raised in a habeas corpus petition.  As this Court has said, the provisions of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson,* 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the

state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, ––– U.S. ––––, ––––, 132 S.Ct. 26, 27 (2011), quoting *Harrington v. Richter*, 562 U.S. ––––, ––––, 131 S.Ct. 770, 786–8 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 50 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

### 1. Sufficiency of the Evidence

In ground one of his petition, Petitioner claims that the evidence presented at trial was constitutionally insufficient to sustain his conviction.  In his argument on this issue to the state appellate court, he focused first on the State's alleged failure to prove that the crimes were committed in Monroe County.  The state court rejected this claim because all of the testimony indicated that the alleged abuse occurred only at the residence shared by Petitioner, the victims, and other members of Petitioner's family, and that the house in question was located in Monroe County.  While that reasoning is sufficient to support the state court's determination, there is a separate reason why this claim fails on its merits in a federal court.

The requirement that, in Ohio, the prosecution prove proper venue beyond a reasonable doubt, is a requirement of state law, not of federal law.  That means that a federal court cannot grant relief to a state prisoner even if the state failed to prove venue.  Thus, for example, in *Baisden v. Tate*, 1989 WL 16145, *1 (6th Cir. Feb. 13, 1989), the petitioner, in his federal habeas petition, "challenged the trial court's jurisdiction on the ground that there was insufficient evidence of proper venue."  The Court of Appeals declined to consider that challenge because "petitioner's [venue] claim is not cognizable in federal habeas corpus and was therefore properly dismissed because matters concerning venue involve matters of state law."  *Id.*  Other federal courts in Ohio have

followed that holding. *See, e.g., Hendrix v. Lisath*, 2015 WL 413802, \*40 (N.D. Ohio Jan. 30, 2015)("matters concerning venue involve matters of state law and therefore any such claim is likewise not cognizable on federal habeas review"); *Kruse v. Moore,* 2008 WL 1744765 (N.D. Ohio Apr. 11, 2008)(discussing why, because venue is not an element of the offense under Ohio law, the federal Due Process clause is inapplicable to a claim that the State failed to present sufficient evidence to support venue in the county of conviction); *see also Hackney v. Lafler*, 2008 WL 2544869, \*8 (E.D. Mich. June 29, 2008)(claim that the prosecution failed to prove the crime occurred in the county where the trial was conducted "is not a cognizable claim on habeas ... review" and "raises a question of state law, which is not a basis for habeas corpus relief").

It is true that there are some decisions which review the sufficiency of the State's evidence as to venue under the Due Process Clause. *See, e.g., Truesdale v. Dallman*, 690 F.2d 76 (6th Cir. 1982). Another judge of this Court has said, based on *Truesdale*, that "[i]t ... appears that the *Jackson* sufficiency of evidence standard applies to the issue of venue." *Doan v. Haviland*, 2004 WL 5258155, \*74 (S.D. Ohio Dec. 20, 2004)(referring to *Jackson v. Virginia*, 443 U.S. 307 (1979)). *Truesdale* did not so hold, however; it simply analyzed the issue that way under the assumption that the State's alleged failure to prove venue would be a federal due process violation. This Court finds persuasive the cases which decline to apply the federal Due Process clause to evaluate the sufficiency of the evidence as to venue. *Cf. Geboy v. Brigano*, 489 F.3d 752 (6th Cir. 2007)(holding that the *Jackson* sufficiency of the evidence test applies only to the essential elements of crimes as defined by state law). Ohio law clearly does not define venue as an element

-16-

of any crime, including the crimes for which Petitioner was convicted, so the Due Process clause does not require Ohio to prove venue in a criminal case by a sufficient amount of evidence, even if State law does so.  Further, it should be noted that the language in the Sixth Amendment to the effect that a criminal trial must occur in "the State and district wherein the crime shall have been committed" has not been applied to the States.  *See, e.g., Kruse v. Moore, supra,* at *7, citing *Caudill v. Scott*, 857 F.2d 344 (6th Cir.1988).  Consequently, Petitioner simply had no federal constitutional right to proof that he committed the crimes in Monroe County.  Even if he did, however, the conclusion of the state appellate court that venue was proved is not an unreasonable application of federal law and, were it reviewable, would be affirmed on that basis. Petitioner has thus suffered no prejudice from the fact that this claim was procedurally defaulted.

The balance of his sufficiency of the evidence claim relates to the testimony from the victims.  Petitioner argued generally in state court that, although the victims did testify to acts which constituted rape and other sexual contact, they were vague and inconsistent about the details.  As the state court of appeals noted, however, Petitioner immediately admitted molesting both victims when confronted by his wife, and he made similar admissions to a friend.  He said the same to police officers.  The state court correctly concluded that it was for the jury to determine the credibility of the witnesses. Its decision on that issue is also due a level of deference under the AEDPA, and when challenges to the sufficiency of the evidence are raised in a federal habeas corpus action, there is a double layer of deference due since any reviewing court also owes a level of

deference to the jury's verdict. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir.2009). Petitioner would not be able to overcome this hurdle even if this Court were to consider the merits of his sufficiency of the evidence claim. Therefore, the fact that this claim was also procedurally defaulted caused him no prejudice.

## 2. Manifest Weight of the Evidence

Unlike a claim that the evidence at trial was not sufficient to support a conviction - a claim which implicates the federal Due Process Clause - an assertion that the conviction was against the manifest weight of the evidence does not raise any issues of federal law. It is purely a state law claim. That is, the Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). Consequently, the Court could not grant relief on this claim even had it not been procedurally defaulted, and Petitioner was therefore not prejudiced by his failure to preserve this claim for federal review.

## 3. Challenges to the Indictment

Petitioner's third claim of error is that many counts of the indictment alleged identical conduct, and that he was not protected against double jeopardy because of its vagueness. This is, if properly preserved, a federal constitutional issue. *See, e.g., Valentine v. Konteh,* 395 F.3d 626 (6th Cir. 2005). However, in Ohio, any challenge to the sufficiency of the indictment must be raised prior to trial. Here, the state court of appeals, relying on the fact that Petitioner did not raise this issue in a timely fashion,

concluded that any claim about the indictment was waived. It therefore reviewed the claim only to determine if plain error had been committed. *State v. Billman, supra*, at *8.

The Court of Appeals decided, in *Biros v. Bagley*, 422 F.3d 379 (6th Cir. 2005), that the failure to object to an indictment at the trial court level is a waiver of any objection under Ohio law, and that this procedural rule is an adequate and independent ground supporting a state court decision denying relief on such a claim. *Biros* also determined that the default is enforceable in federal court even if the state court reviews the claim for plain error. That is what happened here. Consequently, even if Petitioner had not defaulted this claim by failing to take a timely appeal to the Ohio Supreme Court, he was not prejudiced for purposes of federal habeas corpus review because he waived any review of this claim by failing to object to the sufficiency of the indictment at the trial court level.

### 4. Motion for a New Trial

The fourth and final ground which Petitioner raises here is that the trial court erred in denying his motion for a new trial. That motion was premised upon the fact that key witnesses had recanted their testimony. Again, even if this claim had not been procedurally defaulted, this Court could not grant him relief.

First, it is not at all clear that Petitioner presented this claim to the state court as a federal constitutional claim. Although he cited to the United States Constitution in his fifth assignment of error to the state appellate court, his argument was based exclusively on Ohio law and contended that the trial judge's denial of the motion, and refusal to hold an evidentiary hearing, was an abuse of discretion. That is a state law

issue which this Court is powerless to review.  *See Rodriguez v. Warden, Southern Ohio Correctional Facility*, 940 F.Supp.2d 704, 711 (S.D. Ohio 2013).  Any federal due process claim must be premised on a denial of fundamental fairness in the way the motion for a new trial was adjudicated by the state courts.  Petitioner has pointed to no procedural error, and to the extent that he asks this Court to find that the recantations were more credible than the witnesses' trial testimony, it cannot do so.  The state court's opposite conclusion is entitled to a presumption of correctness under 28 U.S.C. §2254(e)(1) and cannot be overturned absent clear and convincing evidence.  *See Guidry v. Sheets*, 452 Fed.Appx. 610, 613 (6th Cir. Dec. 15, 2011).  Petitioner has not presented such evidence. As a result, he has not been prejudiced by the procedural default of this claim, since it would not have resulted in his being granted relief even if this Court considered the claim on its merits.

## IV.  Recommendation

For all of the reasons stated above, it is recommended that the petition for a writ of habeas corpus be **DENIED** and this action be **DISMISSED.**

## V.  Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge